IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYNES,<br><br>        Plaintiff,<br><br>  v.<br><br>BARNHART,<br><br>        Defendant. | No. C05-02459 MJJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Before the Court are cross-motions for summary judgment in a Social Security appeal brought by Plaintiff Richard A. Hynes ("Plaintiff" or "Hynes") and Defendant JoAnne B. Barnhart, Commissioner of the Social Security Administration ("Defendant"). For the reasons set forth below, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

## PROCEDURAL HISTORY

On November 1, 2001, Plaintiff filed an application for Disability Insurance Benefits under Title II and Title XVI of the Social Security Act, alleging a disability with an onset date of May 15, 1991. Plaintiff's insured status for disability insurance expired on December 31, 1997. The Social Security Administration denied both the initial application and the application for reconsideration based on insufficient evidence to assess Plaintiff's disability prior to December 31, 1997. At a hearing conducted on September 23, 2003, the Administrative Law Judge ("ALJ") concluded that

Plaintiff was not disabled. The ALJ's decision became final when the Appeals Council declined Plaintiff's request for review on April 27, 2005. Plaintiff then filed this action for judicial review pursuant to 42 U.S.C § 405(g).

Plaintiff argues that the ALJ's decision was erroneous for three reasons: (1) the ALJ failed to follow the procedure for evaluating Plaintiff's mental impairment as required by law; (2) the ALJ erred in determining that Plaintiff's mental impairments were the product and consequence of his alcohol abuse prior to making a determination that he was disabled; and (3) the ALJ erred in determining that alcoholism was a material factor in contributing to the determination of disability when substantial evidence supported a finding that Plaintiff was disabled independent of his alcoholism.

## FACTUAL BACKGROUND

Plaintiff, who was born August 14, 1937, was sixty years old as of December 31, 1997, the date he was last insured for Social Security Disability Insurance benefits. (Administrative Transcript ("AT") 55.) He has a Bachelor of Science degree in civil engineering and co-owned a computer leasing company from 1977 to 1991. (AT 310-13.) In May, 1991, Plaintiff stopped working because his mental health precluded him from successfully performing his job. (AT 314-16.)

In March 1990, Plaintiff sought treatment for depression from psychiatrist Dr. Peter Walsh, M.D. ("Dr. Walsh"). (AT 315.) His symptoms included isolation, inability to concentrate, ineffectiveness at work, fear of responsibility, intimidation, and other symptoms. (AT 120-288.) From May 1990 until about fall 1996, Dr. Walsh regularly treated Plaintiff for depression, alcohol abuse, episodes of hypomanic activity, periods of panic, and feelings of low self esteem. (AT 20, 321.)

The medical records show that, at the request of Dr. Walsh, Dr. J.P. Stubblebine, M.D. ("Dr. Stubblebine"), performed a consultative psychiatric examination in May 1996. (AT 124-27, 339-40.) At the time of the examination, Plaintiff had been hospitalized for six days after being removed from the Golden Gate Bridge during an apparent suicide attempt. (AT 340-341.) Plaintiff reported that he had no memory of this event. (*See id.*)

2

1   For the period between 1997 to 2001 and May 2003 to September 2003, Plaintiff received
2   treatment twice a month from psychiatrist Dr. Bruce Victor M.D. ("Dr. Victor"). (AT 340.) Dr.
3   Victor diagnosed Plaintiff with atypical bi-polar disorder and opined Plaintiff's medically
4   determinable impairments were sufficiently severe that Plaintiff would be unable to complete a
5   normal workday, three to four days per month, if he were employed full-time. (AT 177-79.)

6   At the Administrative Hearing, Plaintiff testified that both Drs. Walsh and Victor also treated
7   him for his daily alcohol abuse. (AT 324-25.) Plaintiff was in a treatment program from September
8   1994 to February 1995, and followed long periods of sobriety with long periods of drinking. (*See*
9   *id.*) Plaintiff was arrested for Driving Under the Influence ("DUI") on six occasions, spent nights in
10  jail, and was sentenced to community service in 1997 and 1998. (*See Id.*) Plaintiff testified that he
11  did not want any responsibility, stating that he was "fearful, isolative, depressed, and had no social
12  life." (AT 21, 264.)

13  Plaintiff has a history of alcohol abuse from the 1980s until December 1999 when he
14  completely stopped consuming alcohol. (AT 264, 284.)

## LEGAL STANDARD

### A.   Summary Judgment

17  Summary judgment is appropriate if there are no genuine issues as to any material fact and
18  the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court may
19  disturb the Commissioner's final decision "only if it is based on legal error or if the fact findings are
20  not supported by substantial evidence." *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).
21  Substantial evidence is more than a mere scintilla, but less than a preponderance. *Magallanes v.*
22  *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "[C]onsidering the entire record, [substantial evidence]
23  is relevant evidence which a reasonable person might accept as adequate to support a conclusion."
24  *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir.1993). Determinations of credibility, resolution of
25  conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. *Magallanes*,
26  881 F.2d at 750. The decision of the ALJ will be upheld if the evidence is "susceptible to more than
27  one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995). The findings
28  of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42

1  U.S.C. § 405(g). However, even "where findings are supported by substantial evidence, a decision
2  should be set aside if the proper legal standards were not applied in weighing the evidence in making
3  the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968); *See also Allen v. Heckler*, 749
4  F.2d 577, 579 (9th Cir. 1984). The court has the power to enter, upon the pleadings and transcript
5  record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or
6  without remanding the cause for a rehearing. 42 U.S.C. § 405(g)

**B.     Title II and Title XVI Benefits**

To qualify for Title II and Title XVI benefits, a claimant must establish a medically determinable physical or mental impairment that is expected to result in death or last for a continuous period of at least twelve months that prevents him from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). In addition, to establish a disability, an individual "must show that he is precluded from engaging not only in his 'previous work,' but also from performing 'any other kind of substantial gainful work that exists in the national economy." *Matthews*, 10 F.3d at 680; 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

**ANALYSIS**

Plaintiff argues that the ALJ's decision was erroneous for three reasons: (1) the ALJ failed to follow the procedure for evaluating Plaintiff's mental impairment as required by law; (2) the ALJ erred in determining that Plaintiff's mental impairments were the product and consequence of his alcohol abuse prior to making a determination that he was disabled; and (3) the ALJ erred in determining that alcoholism was a material factor in contributing to the determination of disability when substantial evidence established that Plaintiff was disabled independent of his alcoholism. The Court will address each argument in turn.

**A.     Psychiatric Review Technique**

Plaintiff argues that the ALJ's failure to record the application of the prescribed psychiatric technique in the text of his decision and his failure to make specific findings as to the degree of limitation in each of the four functional areas requires remand. 20 C.F.R. § 404.1520(e)(2). Defendant agrees that the ALJ's decision did not contain such analysis; however, argues that any error was harmless because the main issue is whether there was substantial evidence supporting a

4

finding that Plaintiff was disabled independent of his alcohol abuse.

Social Security regulations require an ALJ to fill out and attach to each decision, "in any case where there is evidence which indicates the existence of a mental impairment, a psychiatric review technique form (PRTF) evaluating the severity of mental impairments." *Gutierrez v. Apfel*, 199 F.3d 1048, 1049 (9th Cir. 2000) (holding that the ALJ's failure to fill out and attach a PRTF constituted reversible error because claimant had a non-frivolous claim of mental impairment)[1]; 42 U.S.C. § 421(h). The regulations provide in relevant part:

> [I]n evaluating the severity of mental impairments for adults (persons age 18 and over) and in persons under age 18 when Part A of the Listing of Impairments is used, a special procedure must be followed by us at each level of administrative review . . . [a] standard document outlining the steps of this procedure must be completed by us in each case at the initial, reconsideration, administrative law judge hearing, and Appeals Council levels (when the Appeals Council issues a decision).

*Gutierrez*, 199 F.3d at 1049-1050; 20 C.F.R. § 404.1520a(a)-(d)(1).

Where a mental impairment is severe, the regulations provide in relevant part:

> [W]e will then determine if it meets or is equivalent in severity to a listed mental disorder . . . will record the presence or absence of the criteria and the rating of the degree of functional limitation . . . in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision).

20 C.F.R. § 404.1520a(e)(2).

Unlike the ALJ in *Gutierrez*, here, the ALJ did attach to its decision a copy of the Psychiatric Review Technique and found that Plaintiff's conditions constituted severe impairment in that they have more than a minimal effect on claimant's ability to work. (AT 146-76.) The ALJ, in his decision, found that as of December 1997, "the claimant had major depression, recurrent severe, passive/aggressive personality disorder and substance abuse disorder." (AT 21.) As both parties note, the decision does not record the presence or absence of the degree of functional limitation needed to make the determination of whether the mental impairment meets or is equivalent in severity to the listed mental disorder. The ALJ did find, however, that Plaintiff's allegations of

---

[1] In *Gutierrez*, Plaintiff applied for disability benefits based on depression and physical pain from rheumatism and arthritis. *Gutierrez*, 199 F.3d at 1048. The Commissioner of Social Security denied Plaintiff's application and the district court upheld the decision. The Ninth Circuit reversed and remanded finding that Plaintiff had "presented a colorable claim of mental impairment, and thus . . . [the] ALJ's failure to fill out and attach a psychiatric review technique (PRTF), evaluating the severity of mental impairments" required remand. *Id*. at 1049-1050.

5

severe functional restrictions in the areas of concentration and memory were not credible because they were inconsistent with medical evidence showing a history of ongoing substance abuse. (AT 23.) The ALJ concluded that "the record fails to show that the claimant's impairments either singly or in combination are of sufficient severity to meet a listed impairment." (AT 21.)

The ALJ's decision takes into account all evidence in the record. Even though the ALJ did not record the presence or absence of the degree of each functional limitation, the Court finds such error harmless. The purpose behind recording the degree of functional limitation pursuant to section 404.1520a is to:

> (1) [i]dentify the need for additional evidence to determine impairment severity; (2) [c]onsider and evaluate functional consequences of the mental disorder(s) relevant to your ability to work; and (3) [o]rganize and present our findings in a clear, concise, and consistent manner.

20 C.F.R. § 404.1520a(1)-(3). Here, the PRTF attached to the decision contains categories for the evaluation of the degree of functional limitation on: daily activities, social functioning, concentration and decompensation. The PRTF states, in relevant part, that there was insufficient evidence to make any determination with regards to these categories. Thus, the ALJ's failure to record the technique would not make a difference in his decision. Further, the PRTF does not supply any information that would ultimately change the ALJ's finding that Plaintiff was not disabled since this finding was based on Plaintiff's failure to meet his burden of proving the existence of his disability absent substance abuse. *See e.g. Curry v. Sullivan*, 925 F.3d 1127 (9th Cir. 1991); (AT 22.) Moreover, Plaintiff does not argue that his impairments and functional limitations were not considered. Thus, the Courts finds the ALJ's failure to record the technique in section 404.1520a harmless because the ALJ's opinion considered medical evidence and other factual evidence that justified his conclusion.

**B.      Five-Step Disability Inquiry**

Plaintiff next argues that the ALJ erred in determining that Plaintiff's alcohol abuse was a material contributing factor to his disability prior to finding Plaintiff disabled under the five-step disability inquiry. Defendant argues that the ALJ properly considered Plaintiff's impairments and found that alcohol was a basis of his disability; that absent alcohol abuse, Plaintiff retained the ability to perform past relevant work.

6

A claimant is disabled under Title II of the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." *Parra v. Astrue*, 2007 U.S. App. LEXIS 6793,*6 (9th Cir. 2007); *Bustamante v. Massanari*, 262 F.3d 949, 954-5 (9th Cir. 2001) (superceded by statute on other grounds); 42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled and entitled to benefits, the Commissioner of Social Security conducts a five-step sequential inquiry.  20 C.F.R. § 404.1520a; 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

Under the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity.  *Id*.; 20 C.F.R. § § 404.1520(b), 416.920(b).  If not, the second step asks whether the claimant has a severe impairment.  *Id*.; 20 C.F.R. § § 404.1520(c), 416.920(c).  If the claimant's impairment is severe, the third step requires the ALJ to determine whether the claimant has a condition which meets or equals the conditions outlined in 20 C.F.R. Part 220, Appendix 1. *Id*.; 20 C.F.R. § § 404.1520(d), 416.920(d).  If the claimant does not have such a condition, step four asks whether the claimant has the Residual Functional Capacity to perform his past relevant work. *Id*.; 20 C.F.R. § § 404.1520(e), 416.920(e).  If not, the ALJ proceeds to the fifth and final step, where the ALJ must consider whether the claimant has the ability to perform other work which exists in substantial numbers in the national economy.  *Id*.; 20 C.F.R. § § 404.1520(f), 416.920(f).  If the ALJ answers the final step in the negative, the claimant is considered disabled under the five-step inquiry. The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five.  *Parra,* 2007 U.S. App. LEXIS at *6-*9; *Bustamante*, 262 F.3d at 954-5 (citing *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999)).  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  *Bustamante*, 262 F.3d at 954; *Tackett*, 180 F.3d at 1098.

A finding of "disabled" under the five-step inquiry does not automatically qualify a claimant for disability benefits.  *Parra*, 2007 U.S. App. LEXIS at *7 (citing *Bustamante*, 262 F.3d at 954). Under section 423(d)(2)(c), a claimant cannot receive disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the

7

individual is disabled." *Id.*; *Ball v. Massanari*, 254 F.3d 817, 819-820 (9th Cir. 2001). Congress adopted this amendment in 1996 as part of the Contract with America Advancement Act, which is also known as Public Law 104-121[2]. *Parra*, 2007 U.S. App. LEXIS at *8; *Ball*, 254 F.3d 820. Under the implementing regulations, the ALJ must conduct a drug abuse and alcoholism analysis ("DAA Analysis") by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol. *Parra*, 2007 U.S. App. LEXIS at *8; 20 C.F.R. § 404.1535(b). If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. *Parra*, 2007 U.S. App. LEXIS at *8. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied. *Id.* at *9.

In the instant case, Plaintiff asserts that the ALJ erred by failing to conduct the full five-step analysis to determine that Plaintiff's mental impairments were disabling prior to considering if the effects of his alcohol abuse was material.[3] Defendant argues that the ALJ did find Plaintiff to be disabled, but found that Plaintiff failed to establish that his mental impairments, independent of his alcohol abuse, prevented him from performing his past relevant work.

In discussing steps one through three, the ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since May 15,1991; (2) Plaintiff had "major depression, recurrent, severe, passive/aggressive personality disorder and substance abuse disorder" and that these "conditions constitute[d] a 'severe impairment' in that they have more than a minimal effect on claimant's ability to do work," as of December 1997; and (3) the record did not show that the "claimant's impairments either singly or in combination are of sufficient severity to meet a listed impairment." (AR 21.)

---

[2] The ALJ refers to Public Law 104-121 in his decision denying Plaintiff disability benefits.

[3] Plaintiff bases his argument on *Bustamante* which held that ALJ must identify disability under five-step procedure before conducting DAA Analysis to determine whether substance abuse was material to disability. However, *Bustamante* was superceded by statute as stated in *Aponte v. Barnhart*, 2003 U. S. Dist. LEXIS 4899,*11 (S.D.N.Y 2003). In *Bustamante*, the court relied on the language of 20 C.F.R. § 404.1535, which states: "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." Plaintiff relies heavily on this language. However, as the court in *Aponte* points out, Regulation 404.1535 was adopted before Congress passed § 423(d)(2)(C), and thus at a time when alcoholics could still receive SSI benefits as long as they complied with treatment for their addiction.

8

1    Pursuant to these findings, the ALJ was then required to determine whether Plaintiff was able
2 to do any work that he had done in the past, and if not, to determine whether plaintiff was able to do
3 any other work which exists in substantial numbers in the national economy.  The ALJ found that
4 Plaintiff had the residual functional capacity to perform the requirements of work absent alcohol
5 abuse.  In making the assessment of whether Plaintiff "could return to past relevant work or any
6 other work on a sustained basis," the ALJ reviewed Plaintiff's subjective complaints in accordance
7 with the guidelines provided by Social Security Ruling 96-7p.  (AR 21.)  The ALJ stated:

> [such] ruling requires first medical signs and laboratory findings of a physical or mental impairment that could reasonably be expected to produce the symptoms.  The intensity, persistence, and functional limitation must be evaluated to determine the effects on basic work activities.  When the extent of symptoms are not substantiated by objective medical evidence a credibility finding must be made for possible 'excess pain' under *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986).

(*italics added*) (AT 21.)  The ALJ's analysis continues to provide that:

> the medical evidence is clear that during the period prior to [December 31,1997] that claimant suffered from a major mental illness, as well as a history of alcohol abuse which became periodic and apparently an almost daily event following his 1988 bankruptcy.

(AT 22.)  To support denial of disability benefits under Public Law 104-121 the ALJ relied on the
"[c]laimant's testimony, as well as corroborative information in the reports of Drs. Stubblebine,
Walsh, and Victor, as well as information in the later examination by Dr. Vander Veer [on June 3,
2002]" to "show that substance abuse played a major part in claimant's serious functional limitations
during this period."  (AT 22.)

   The ALJ maintained that "while claimant had serious underlying mental impairment . . . his
ongoing alcoholism exacerbated this condition and contributed materially to his inability to function
even on a basic level."  The ALJ found that claimant failed to meet his burden of proving that absent
substance abuse his mental impairment was independently disabling.  (AT 22.)  The evidence in the
record did not support Plaintiff's contention that he would still be disabled absent alcohol abuse.
Plaintiff did not meet his burden of proof in showing that absent substance abuse Plaintiff's mental
impairment was independently disabling.  Accordingly, the ALJ concluded that the medical
evidence established that Plaintiff would not be disabled if he stopped using alcohol.  The ALJ
properly conducted this inquiry, and therefore, this Court will not disturb it.

9

### C. Substantial Evidence

Finally, Plaintiff argues that the ALJ erred in determining that alcoholism was a material factor contributing to the determination of disability because substantial evidence established the Plaintiff was disabled independent of his alcoholism. Plaintiff also argues that the ALJ's rejection of the opinions of Drs. Walsh and Victor's assessments of Hynes' status after 1997 as "irrelevant" is error. Defendant argues that Plaintiff misapprehends the standard of review and argues to the contrary, that substantial evidence supported the ALJ's finding that Plaintiff's alcohol abuse was a contributing factor material to the determination of disability.

The Court many only disturb this decision if Plaintiff establishes that the ALJ's decision was not based on substantial evidence or that the decision was based on legal error. *Andrew*, 53 F.3d at 1039. To determine whether a claimant is disabled, the ALJ must consider all symptoms affecting the claimant's daily activities and ability to work. 20 C.F.R. § § 404.1529, 416.929. The ALJ must consider all functional limitations and restrictions presented in the evidence. Further, medical evaluations made after the expiration of claimant's insured status are relevant to an evaluation of the pre-expiration condition. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996); *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).

Substantial evidence in the record supports the ALJ's decision. The ALJ reviewed the reports of Drs. Stubblebine, Walsh, Victor, and Vander Veer to support his finding. (AT 22.) A summary of the evidence in the record is as follows.

In a June 6, 1996, report, Dr. Stubblebine recounted Plaintiff's "alcoholic career" and noted that he had been arrested, at that time, three times for DUIs. (AT 126-27.) Dr. Stubblebine described Plaintiff as "alert, pleasant, sociable" and he was "impressed with his attention to social graces." (TR 126, 127.) According to Dr. Stubblebine, Plaintiff "has a long history of avoidance of psychological factors of importance. He has an almost equally long habit of substance abuse and avoidance of dealing with psychological issues." (AT 127.)

In a June 27, 2003 report, Dr. Walsh stated that he treated Plaintiff from 1990 through 1996

for depression, alcohol abuse, episodes of hypomanic activity, periods of panic, feeling of low self-esteem, and problems related to his separation and divorce.[4] (AR 263.) Dr. Walsh opined that while he was treating Plaintiff, "[h]is drinking which had been episodic became more routine."

In a September 20, 2004, report, Dr. Victor stated that he had treated Plaintiff from April 1997 through November 2001, on five occasions between May 2003 and September 2003, and that to his knowledge, Plaintiff had abused alcohol from April 1997 through December 1999. (AT 284-88.) Plaintiff argues that Dr. Victor clearly opined that Hynes would be unable to sustain work due to his mental impairments independent of his alcohol use prior to December 1997. However, Dr. Victor's report provides:

> I find that more than three or four times per month Mr. Hynes mental impairments would be of such severity that he would be unable to complete a workday if he were employed full time. I feel that these limitations were present *since* April 15, 1997, when I first began treating Mr. Hynes.

(emphasis added) (AT. 284.) Thus, the report provides Dr. Victor's assessment of Hynes' limitations *since* April 15, 1997 but does not provide an assessment during the relevant time period. Further, Dr. Victor in his report, expressly declined to opine as to whether Plaintiff would have been functionally limited independent of his alcohol abuse.[5] (AT 285.) Thus, Plaintiff's argument that the ALJ rejected the opinions of Hynes' treating physicians is not supported by the record before the

---

[4] Plaintiff attempts to use portions of Dr. Walsh's report that detail Plaintiff's status after he stopped abusing alcohol in 1999, to argue that Plaintiff must have been disabled during 1991-1996 independent of alcohol abuse because he was still significantly functionally limited after he quit. (Plf.'s Mem. of P. & A. at 14.) However, he fails to bring up case law which supports the proposition that reformed alcoholics can use evidence of their mental state after they've stopped drinking to prove their prior disability.

Plaintiff cites to several cases, including *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) to stand for the proposition that "reports containing observations made after the period for disability are relevant to assess the claimant's disability." Contrary to Plaintiff's assertion, the ALJ did in fact look all the medical reports in the record, including Dr. Walsh's 2003 report to determine Plaintiff's status during the relevant time period, 1991-1997. (*See* AR 21.) The ALJ concluded that Dr. Walsh's summary of Plaintiff's status from 1990-1996 was consistent with Plaintiff's hearing testimony and previous information found on medical reports. (*Id.*)

As for the portions of the report detailing Plaintiff's status after 1999, when he stopped drinking, the ALJ determined it was improper to consider this evidence as it did not speak to Plaintiff's status prior to 1997. This determination seems prudent in light of the substantial evidence in the record which suggests that the Plaintiff's alcoholism was a material contributing factor to the determination of disability.

[5] In response to the question "In your opinion would Mr. Hynes have suffered from the same degree of Mental functional limitations as expressed in attachment A [Medical Source Assessment of Patients' Mental Functional Limitations which diagnose Mr. Hynes according to four categories: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation] prior to December 1999 even if he was not abusing alcohol," Dr. Victor responded: "I can say that this might well be the case, however, I do not feel I can give an adequate definitive answer to this question because of its hypothetical nature." (AT 285.)

11

1  Court.

2  In addition to the evidence cited above, a June 3, 2002 report, Dr. Vander Veer stated that
3  Plaintiff drank steadily through December 1999. According to Dr. Vander Veer, Plaintiff stated that
4  his drinking "ruined my life" and "damn near killed me." (AT 141.) Plaintiff believed that "nothing
5  changed until he stopped drinking." (*See id.*) Dr. Vander Veer opined that Plaintiff "is correct in
6  pointing to the alcohol abuse as a major factor in his not functioning well." (AT 143.) The ALJ also
7  noted in his decision that Dr. Vander Veer did not offer an opinion as to Hynes' mental status at the
8  time prior to December 1997.[6]

9  As noted by the ALJ, Plaintiff himself testified "the drinking became very bad at the same
10 time depression became very bad . . . at [the time of] the corporate bankruptcy in September of '88 .
11 . . [b]ut I think the drinking was kind of leading up to that." (AT 22, 324.)

12 Plaintiff's own treating physicians, Drs. Victor and Walsh declined to draw the conclusion
13 that Plaintiff's medical condition today, due to his remission from alcohol abuse in 1999, is exactly
14 the same as it was during the relevant period. (TR 285.)

15 The record, upon full consideration thereof, reflects substantial evidence supporting the
16 ALJ's finding that Plaintiff's alcohol abuse was a contributing factor material to the determination of
17 disability. As such, the ALJ's determination that Plaintiff could not be considered disabled during
18 the relevant period is supported by substantial evidence.

19 //
20 //
21 //
22 //
23 //
24 //
25 //

---

[6]Dr. Vander Veer's diagnosis of Hynes' Medical Source and Functional Capacity was as provided: (1) the claimant is able to understand and complete simple tasks; (2) the claimant is able to understand but completion of complex instructions on a continued basis would be difficult; (3) the claimant is able to respond appropriately to co-workers, supervisors and the public; (4) the claimant is able to maintain concentration and pace but his perseverance is questionable; and (5) the claimant shows minimal limitation of daily living.

12

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's cross-motion for summary judgement and **DENIES** Plaintiff's motion for summary judgement.

**IT IS SO ORDERED.**

Dated: October 23, 2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE